**Angel L. CARO, et al.,
Plaintiffs, Appellees,**

v.

**Awilda APONTE–ROQUE, etc.,
Defendant, Appellant.**

No. 88–1989.

United States Court of Appeals,
First Circuit.

Heard Feb. 28, 1989.

Decided June 15, 1989.

Luis N. Blanco Matos, Federal Litigation Div., Dept. of Justice, with whom Rafael Ortiz Carrion, Sol. Gen., and Vannessa Ramirez, Asst. Sol. Gen., were on brief, for defendant, appellant.

Jesus Hernandez Sanchez with whom Antonio Hernandez Sanchez, San Juan, P.R., and Hernandez Sanchez Law Firm were on brief, for plaintiffs, appellees.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

BREYER, Circuit Judge.

Before 1985, the twenty-three plaintiffs in this "political discharge" case worked for Puerto Rico's Department of Education, in "transitory," *i.e.,* non-permanent, positions. Seventeen held jobs with the title "Executive Director;" the remaining six held jobs with such titles as "Special Assistant," "Executive Functionary," "Teacher Assistant," "Food Supervisor," "General Supervisor," and "Docent Personnel Director." All plaintiffs belonged to the New Progressive Party ("NPP"). In 1985, after the election of a new Governor, the new Secretary of Education, who was a member of the Popular Democratic Party ("PDP"), removed the plaintiffs from the jobs listed above, reassigning some of them to other permanent, but apparently less desirable, positions. The plaintiffs sued the Secretary claiming that her dismissals (1) violated the First Amendment's prohibition against dismissing employees because of their political party affiliation, *see Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and (2) violated the Fourteenth Amendment's prohibition against taking "property" without "due process of law," *see Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The Secretary asserted a defense of "qualified immunity," *see Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and moved for summary judgment. *See Anderson,* 107 S.Ct. at 3040; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The district court denied summary judgment (1) in respect to all plaintiffs on the First Amendment claim, and (2) in respect to the "Executive Directors" on the Fourteenth Amendment claim. The Secretary appeals. After examining the record, we find that we agree with the first, but not the second, determination.

## I.

### The First Amendment Claims

The single question that we must decide is whether the plaintiffs, in opposing the Secretary's motion for summary judgment, demonstrated the existence of a "genuine" and "material" issue of fact warranting the district court's proceeding to trial on the "qualified immunity" question. Fed.R.Civ.P. 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Daury v. Smith,* 842 F.2d 9, 11 (1st Cir.1988); *Perez De la Cruz v. Crowley Towing and Transportation Co.,* 807 F.2d 1084, 1086 (1st Cir.1986), *cert. denied,* 481 U.S. 1050 (1987); *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 929 (1st Cir.1983). *See also Unwin v. Campbell,* 863 F.2d 124, 130–33 (1st Cir. 1988) (court should examine evidence in respect to factual issues on interlocutory appeal of a denial of summary judgment). We believe the plaintiffs here have sufficiently demonstrated a genuine issue of material fact.

The issue in question is the factual matter of the Secretary's reason for dismissing the plaintiffs. Was her motive political? This issue is "material;" all parties to the case agree that political party affiliation is *not* an appropriate qualification for the jobs in question. *See* Brief of Appellant at 5, 19; Brief of Appellees at 1; *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294 (politically motivated discharge is legal only if "party affiliation is an appropriate requirement for the effective performance of the public office involved."). If political affiliation did in fact motivate the dismissals, the Secretary violated *"clearly established* constitutional rights." *Davis v. Scherer,* 468 U.S. 183, 193, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984) (emphasis in original); *see Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The *only* issue in the case concerns motive. Liability turns upon resolution of that factual matter. *See Mt. Healthy City School*

*District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (unretained employee must show that exercise of First Amendment rights was a " 'motivating factor' in the [government's] decision not to rehire him") (footnote omitted); *Kercado–Melendez v. Aponte–Roque*, 829 F.2d 255, 264 (1st Cir. 1987) (same), *cert. denied,* — U.S. —, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988).

Moreover, the factual controversy in respect to motive is "genuine." On the one hand, the Secretary asserts that she dismissed the plaintiffs because she learned that their jobs had been created unlawfully. She adds that she had authority to dismiss them because Puerto Rican law labelled their positions "transitory," which meant that they could hold their jobs only upon a "year to year" basis. And she points to a legal memorandum, prepared by the Puerto Rican Secretary of Justice, that backs up her assertions.

On the other hand, the plaintiffs point to affidavits that suggest that the Secretary's motives for obtaining the legal memorandum (hence, for dismissing plaintiffs) in fact were political. One of the plaintiffs, Angel Alicea Cosme, swore, for example, that:

[A]fter the Popular Democratic Party won the elections in November 1984 and defendant Awilda Aponte Roque was appointed Secretary of Education of Puerto Rico, she went ahead and replaced the Executive Directors working for the Department of Education and who were members of the New Progressive Party by members of the Popular Democratic Party.... I was replaced by Mrs. Carmen Sylvia Cintron, a member of the Popular Democratic Party, who took over my functions as informative Director of the Department.... the Secretary of Education kept working as Executive Directors the following persons that are members of the Popular Democratic Party: [lists three individuals]. Afterwards, the Secretary of Education decided to make an administrative change and transferred these persons to what is known in personnel nomenclature as classified personnel.

Addendum to Brief of Appellees at 14–15. In addition, Angel Melendez Osorio swore that:

[W]hen the Secretary of Education, Honorable Awilda Aponte Roque, who I know belongs to the Popular Democratic Party, decided to dismiss the Executive Directors, she kept the employees in similar positions identified with her own party, the Popular Democratic Party. Then she switched these employees belonging to the Popular Democratic Party to what is known as classified employees and assigned others to the position of Educational Investigators. In other cases she simply replaced the Executive Director belonging to the New Progressive Party with some employee belonging to her own party. For example, in the Vocational Area and Agricultural Program, she appointed Mr. Anselmo Miranda Mercado, who is a member of the Popular Democratic Party to replace plaintiff Angel Luis Caro, who is a member of the New Progressive Party.... the Secretary of Education, as part of her scheme, concerning the dismissal of all the Executive Directors belonging to the New Progressive Party, assigned, to the employees belonging to the Popular Democratic Party who were kept working with the Department, a bonus and/or a differential salary. With this bonus the employees belonging to the Popular Democratic Party were able to obtain a salary equal or similar to the displaced Executive Directors that belonged to the New Progressive Party.

Addendum to Brief of Appellees at 6–7. Another plaintiff, Angel Luis Caro, provided a descriptive table of several members of the NPP whom he said the Secretary terminated and replaced with members of the PDP. Addendum to Brief of Appellees at 19–21.

The Secretary argues that these affidavits *must* be inaccurate. She says she could not have "replaced" the dismissed Executive Directors because she "abol-

ished" their jobs. But we believe one could reasonably read these affidavits as using words such as "replaced" not to refer to hiring for jobs with the same formal titles, but to mean that the new PDP appointees simply assumed salaries and job responsibilities roughly equivalent to those from which the plaintiffs had been removed.

As we read them, the affidavits suggest a pattern of dismissals that might lead a trier of fact to conclude that the Secretary's motives were political. The memoranda from the Puerto Rico Justice Department demonstrate neither that the Secretary *had* to dismiss the plaintiffs, nor that she could not find equivalent positions for them. At this stage of the proceeding, we cannot say that a jury could not reasonably decide that plaintiffs' evidence shows the Secretary would have acted differently had the plaintiffs belonged to the same political party as she did. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576 (plaintiff must show protected conduct was a "substantial" or "motivating" factor in discharge); *Kercado–Melendez*, 829 F.2d at 264 (same).

We hold only that the district court properly exercised its legal authority in deciding to proceed to trial. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988) (test for granting summary judgment is "particularly rigorous when the disputed issue turns on a question of motive"); *Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 32 (1st Cir.1988) (district court may deny summary judgment as a matter of discretion, where dispute is about issues best understood through full exposition before jury), *cert. denied*, —— U.S. ——, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2728 & nn. 11, 12 (1983 & Supp. 1988) (same) (collecting cases). We express no view on the merits of the case; and, of course, it is still possible that, after hearing all the evidence, the district court will decide that the evidence so strongly favors one side or the other that a directed verdict is proper.

## II.

*The Fourteenth Amendment Claims*

■ We agree with the appellant that the district court should have granted summary judgment, finding "qualified immunity" in respect to the plaintiffs' Fourteenth Amendment claims. The plaintiffs are entitled to the Fourteenth Amendment's procedural protections only if the jobs from which the Secretary removed them amounted to "property" as that word is used in the Constitution. It is legally well established that a state employee's job is "property" only if *state law* leads the employee to expect that he will be able to retain the job. *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491 (such expectations must be grounded not in the Constitution but in an independent source such as state law); *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975) (state employee must have not merely a subjective expectation of continued employment, but a "legitimate claim of entitlement to continued employment" under state law or rules); *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Of course, sometimes a continuing state practice, such as retaining teachers permanently at a university, could provide convincing evidence of the state law in question. *See Sindermann*, 408 U.S. at 601–03, 92 S.Ct. at 2699–701. But that is not so here.

■ In this instance, the Supreme Court of Puerto Rico has made it clear that the law of Puerto Rico does not give persons who hold "transitory" jobs, such as plaintiffs, any expectation of continued employment beyond the time their yearly appointments expire. In *Department of Natural Resources v. Correa*, 87 J.T.S. 35 (P.R. Sup.Ct. April 15, 1987) (official translation provided in Addendum to Brief of Appellant at 7), the Court said: "we conclude that a transitory appointment generates a job retention expectancy *only* during the term of the appointment.... a transitory employee is not entitled to a permanent status nor does he have a legitimate job retention expectancy once his appointment expires." Appellant's Addendum at 12.

Though *Correa* dealt with employees of a Department different from the Department of Education, it relied heavily on *Pacheco v. Secretario de Instruccion Publica*, 108 D.P.R. 592 (1979), which reached the same result in respect to teachers. Although past practice in the Department of Education may have led the plaintiffs to believe the Department, in fact, *would* renew their jobs each year, *see Sindermann*, 408 U.S. at 601–03, 92 S.Ct. at 2699–701; *Cheveras–Pacheco v. Rivera–Gonzalez*, 809 F.2d 125, 126–27 (1st Cir.1987), that practice cannot provide them with a *legal* entitlement to regular renewal (under Puerto Rican law) given the explicit commonwealth court holdings to the contrary in *Correa* and *Pacheco*. It cannot have been "clearly established" that failure to reappoint transitory employees of the Department of Education of Puerto Rico would deprive those employees of "property" under the Fourteenth Amendment; they did not hold such "property." The district court therefore should have granted summary judgment to the defendant on this claim. *See also Bennett v. City of Boston*, 869 F.2d 19, 21 (1st Cir.1989) (provisional employees have no legitimate expectation of continued employment); *Castro v. United States*, 775 F.2d 399, 401, 406 (1st Cir.1985) (per curiam) ("successive, finite, temporary" appointments "by their very nature, could not give rise to a legitimate expectation of continued employment once those appointments expired.").

*The decision of the district court is affirmed in part, and reversed in part.*