**Jose FLORES CAMILO,
et al., Plaintiffs**

v.

**Julio ALVAREZ RAMIREZ, in his personal and official capacities as Administrator of the Thoroughbred Horse Racing Administration, et al., Defendants**

**No. CIV. 01–2715(JP).**

United States District Court,
D. Puerto Rico.

May 21, 2003.

---

Francisco R. González Colón, Esq., San Juan, PR, for Plaintiff.

Zuleika Llovet Zurinaga, Esq., Ivonne Palerm–Cruz, Esq., Commonwealth Department of Justice, Federal Litigation Division, San Juan, PR, for Defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Defendant Julio Alvarez's Motion for Summary Judgment (docket No. 44).

Plaintiffs, who have not opposed Defendant's motion [1], bring the instant case alleging political discrimination under 42 U.S.C. § 1983 in violation of the First and Fourteenth Amendments to the United States Constitution.

On November 4, 2000, the General Elections were held in Puerto Rico. The candidate for the Popular Democratic Party ("PDP"), Sila Calderón, won the race for governor. Calderón appointed Co–Defendant Julio Alvarez as Administrator of the Thoroughbred Horse Racing Administration of Puerto Rico (the "Administration"). Co–Defendant Modesto Estrada is the Director of the Administration. Plaintiffs are 18 former employees of the Administration. Thirteen of the Plaintiffs worked for the Administration as tenured employees under a "Contract for Services per days of race", a contract that had a six month term with an option of renewal at the end of that term. One Plaintiff worked for the Administration under a Professional Services Contract that also had a term of six months. One Plaintiff worked for the Administration as a career employee. As for the final three Plaintiffs, the parties disagree as to whether they worked for the Administration as trust employees in policymaking positions or as career employees.

The Plaintiffs allege that they were all non-policy making employees of the Administration and all members of the New Progressive Party ("NPP"). According to Plaintiffs, Defendants, who are members of the PDP, discharged them, failed to renew their contracts, or transferred them to inferior positions based on their political affiliation. Plaintiffs allege that Defendants replaced them with members of the PDP as part of a plan to eliminate all NPP employees of the Administration.

Defendant Alvarez now moves for summary judgment, alleging that 1) The Plaintiffs who worked as transitory employees do not possess a property interest in their employment; 2) three of the Plaintiffs were trust employees who do not have a property interest in their employment or a cause of action for political discrimination; 3) one employee was transferred to a position in the Administration that matched her job classification; 4) all Plaintiffs have failed to state a claim for political discrimination; 5) Defendant is protected from suit by the doctrine of qualified immunity.

## II. STATEMENTS OF FACTS

These uncontested facts are taken from the uncontested facts agreed to by the parties during the Initial Scheduling Conference.

1. Plaintiff José Flores–Camilo was hired as a tenured employee according to the Contract for Services Per Days of Race.

2. Plaintiff Edgardo Serrano–Canales was hired as a tenured employee ac-

---

1. Defendant filed his Motion for Summary Judgment on March 10, 2003. Plaintiffs have yet to oppose this motion. Under the Local Rules of the United States District Court for the District of Puerto Rico, a respondent who wishes to oppose a motion must do so within ten days of service of the motion.

cording to the Contract for Services Per Days of Race.

3. Plaintiff Victor Castro de León was hired as a tenured employee according to the Contract for Services Per Days of Race.

4. Plaintiff Alvaro Sayán was hired as a tenured employee according to the Contract for Services Per Days of Race.

5. Plaintiff William Arroyo–García was hired as a tenured employee according to the Contract for Services Per Days of Race.

6. Plaintiff Luis Abraham López was hired as a tenured employee according to the Contract for Services Per Days of Race.

7. Plaintiff Sergio Sánchez–Estrella was hired as a tenured employee according to the Contract for Services Per Days of Race.

8. Plaintiff Marco González–Fernández was hired as a tenured employee according to the Contract for Services Per Days of Race.

9. Plaintiff Bernabé Pitré was hired as a tenured employee according to the Contract for Services Per Days of Race.

10. Plaintiff Angel Rivera González was hired as a tenured employee according to the Contract for Services Per Days of Race.

11. Plaintiff Ernesto Pérez–Arroyo was hired as a tenured employee according to the Contract for Services Per Days of Race.

12. Plaintiff Elvis Fred Flores–Rivera was hired as a tenured employee according to the Contract for Services Per Days of Race.

13. Plaintiff Angel Hiraldo–Morales was hired as a tenured employee ac-

cording to the Contract for Services Per Days of Race.

14. Plaintiff Francisco Irlanda–Pérez was hired pursuant to a Professional Services Contract.

15. Defendant Julio Alvarez is the Administrator of the Thoroughbred Horse Racing Administration.

16. Defendant Modesto Estrada is the Director of the Thoroughbred Horse Racing Administration.

17. The Thoroughbred Horse Racing Administration is one of high public interest.

18. The parties stipulate to the language of the Plaintiffs' employment contracts.

19. Plaintiffs agreed to the terms and conditions contained in their contracts.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to

permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## IV. CONCLUSIONS OF LAW

### A. Failure of Transitory Employees to Allege a Cognizable Property Interest

According to the parties, the following thirteen Plaintiffs were hired as tenured employees with a "contract for services per days of race": José Flores Camilo, Edgardo Serrano–Canales, Víctor Castro de León, Alvaro Sayán, William Arroyo García, Luis A. López–Soto, Sergio Sánchez–Estrella, Marco González Fernández, Bernabé Pitré, Angel Rivera–González, Ernesto Pérez–Arroyo, Elvis Fred Flores–Rivera, Angel Hiraldo–Morales. Plaintiffs' contracts were for a six-month term with the possibility of renewal after six months. Plaintiffs allege that they had an expectation that these contracts would be continuously renewed. However, all Plaintiffs' contracts were not renewed upon their termination at various points in 2001.

The parties agree that Francisco Irlanda Pérez was hired through a "professional services contract," which also had a term of six months, and also terminated and was not renewed in 2001.

Plaintiffs allege that they had an expectancy in continued renewal of their bi-annual contracts and a binding obligation to be contracted according to performance and productivity. Plaintiffs allege that their contracts were not renewed due to their political affiliation. According to Plaintiffs, "the usage and custom in the agency was that there would be extension of contract if the persons performance was good" (sic). *See* Plaintiffs' Complaint at 15.

It is well-accepted by the First Circuit that "transitory employees generally do not have a property interest in continued employment beyond their yearly terms of appointment." *See Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 94 (1st Cir.1997). As stated in *Caro v. Aponte–Roque*, 878 F.2d 1,4 (1st Cir.1989),

the Supreme Court of Puerto Rico has made it clear that the law of Puerto Rico does not give persons who hold 'transitory' jobs, such as plaintiffs, any expectation of continued employment beyond the time their yearly appointments expire. In *Department of Natural Resources v. Correa*, 87 J.T.S. 35 (P.R. Sup.Ct. April 15, 1987), the Court said: "we conclude that a transitory appointment generates a job retention expec-

tancy *only* during the term of the appointment ... a transitory employee is not entitled to a permanent status nor does he have a legitimate job retention expectancy once his appointment expires."

The Plaintiffs in this case who were hired under contracts that cover a fixed term of employment, in this case six months, are considered transitory employees and therefore do not have any expectation of continued employment beyond the term of their contracts. Accordingly, the Court **GRANTS** Defendant's motion to dismiss the Fourteenth Amendment Due Process claims of the fourteen Plaintiffs hired as transitory employees under contracts for fixed terms in this case. Therefore, the claims of José Flores Camilo, Edgardo Serrano–Canales, Víctor Castro de León, Alvaro Sayán, William Arroyo García, Luis A. López–Soto, Sergio Sánchez–Estrella, Marco González Fernández, Bernabé Pitré, Angel Rivera–González, Ernesto Pérez–Arroyo, Elvis Fred Flores–Rivera, Angel Hiraldo–Morales, and Francisco Irlanda Pérez are **DISMISSED WITH PREJUDICE**. However, this ruling does not affect in any way these Plaintiffs' claims for violation of their First Amendment rights to free speech under 42 U.S.C. § 1983

### B. Trust Employees do not Have a Cause of Action for Political Discrimination or Property Interest in Employment

Defendant states that the following three Plaintiffs were hired as trust employees by the previous NPP administration: José de Jesús Castillero, David Domenech–Feliciano, and José Fanfán–Román. Plaintiffs allege that these employees were career employees, not policy-making trust employees. The parties agree that the above employees were terminated from their positions.

In general, a public employee may not be fired solely because of his political affiliation. *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Rosenberg v. City of Everett,* 328 F.3d 12, 17–18 (1st Cir.2003). Dismissal based on political patronage is permissible, however, if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 240 (1st Cir.1986) (en banc) (*quoting Branti,* 445 U.S. at 518, 100 S.Ct. 1287). Political discharge is permitted to give a new administration an opportunity to fulfill expectations by surrounding itself with "agency leaders and top subordinates responsive to the elected officials' goals." *Flynn v. City of Boston,* 140 F.3d 42, 46 (1st Cir.1998). Whether or not a position is subject to political discharge is a legal question for the courts. *Id.* at 44. Party affiliation is an appropriate requirement for a public position if (1) "the discharging agency's functions entail 'decisionmaking on issues where there is room for political disagreement on goals or their implementation,'" and (2) "'the particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure.'" *Roldán–Plumey v. Cerezo–Suárez,* 115 F.3d 58, 61–62 (1st Cir.1997) (*quoting Jiménez Fuentes,* 807 F.2d at 241–42).

However, in Puerto Rico, every regular employee in a career position who is appointed to a trust position shall be entitled to be reinstated in a position equal or similar to the last one he held in the

career service after a change in administration.

In 1982, the Director of the Central Office of Personnel Administration implemented the mandate of Section 1350 as follows:

Whenever a trust employee is separated from his position and prior to rendering services in the trust service he held a career position with a regular status, he will have the absolute right to be reinstated to a position equal or similar to the last one he occupied in the career service. The responsibility for reinstating the employee will belong to the agency from which he was separated, which must exhaust all remedies to reinstate the employee in any of its programs or in other agencies of the personnel system. 3 P.R. Laws Ann. § 1350.

Thus, based on Puerto Rico law, if José de Jesús Castillero, David Domenech–Feliciano, and José Fanfán–Román were appointed to trust positions after occupying career positions, they had to be reinstated to their career positions by the new administration.

In this Court's Initial Scheduling Conference Order, the Court ordered the parties to submit a joint signed memorandum agreeing to the facts contained in Plaintiffs' personnel files. The parties have yet to agree as to these facts, which renders the Court unable to determine the status of these Plaintiffs.

It is not clear from the facts before the Court whether these three Plaintiffs were trust employees and, if so, whether they previously worked for the Administration as career employees and thus were to be returned to their career positions after the change in administration. The Court lacks sufficient facts upon which to decide whether these Plaintiffs have a cause of action for the deprivation of a constitution-

ally-protected property interest under the Due Process clause or a claim for political discrimination under the First Amendment. Therefore, the Court **DENIES** Defendant's motion for summary judgment on the Fourteenth Amendment due process claims and First Amendment claims of José de Jesús Castillero, David Domenech–Feliciano, and José Fanfán–Román.

### C. Career Employee was not demoted to Unreasonably Inferior Position

The parties agree that Plaintiff Luz Ortiz Nieves was a permanent career employee who worked as an "Office Technician III." Defendant states that Plaintiff Luz Ortiz Nieves was hired as an Office Technician III by the Administration and was later transferred to another position in the Administration. Plaintiffs state that she was a permanent career employee who was "illegally demoted". The parties have not filed sufficient information to determine what position she was transferred to and whether the duties of this position were unreasonably inferior to the duties of Plaintiff's job classification. For example, in their statement of uncontested facts, Defendants merely state that "Plaintiff Luz N. Ortiz Nieves was hired as an Office Technician III, by the Racing Track in the Horse (Thoroughbred) Racing Administration and was later transferred to another position within the Administration." *See* Defendant's Statement of Uncontested Material Facts at 10 (docket No. 44). Defendant does not even state to which position she was transferred, which makes it impossible for this Court to determine whether Defendant has adequately rebutted Plaintiff's allegation that she was demoted to an unreasonably inferior position. Accordingly, Defendant's motion for summary judgment on the claims against him by Plaintiff Luz Ortiz Nieves is **DENIED.**

The Court urges the parties, in the future, to provide sufficient facts and information upon which to render a decision.

### D. Failure to State a Claim under 42 U.S.C. § 1983

Defendant alleges that Plaintiffs have not demonstrated a causal connection between the Defendant and the violation of Plaintiffs' rights. According to Defendant, he had no discriminatory animus against Plaintiffs. He states that he acted pursuant to law, rules, and regulations, in good faith, and never with malice, negligence, or willfulness. Defendant alleges that there is no evidence that he was aware of Plaintiffs' political affiliation prior to their dismissal and/or transfer. According to Defendant, Plaintiffs have failed to identify acts or omissions by him that constitute violations of their constitutional rights. Finally, Defendant alleges that Plaintiffs' only evidence of animus was a statement he made to the media that was taken out of context.

■■■■■ On a motion for summary judgment, a plaintiff bears the initial burden of showing that political discrimination was a substantial or motivating factor in a defendant's employment decision. To establish a prima facie case of political discrimination, plaintiffs must produce sufficient evidence to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse employment decisions. *See Báez–Cruz v. Municipality of Comerío*, 140 F.3d 24, 28 (1st Cir.1998).

■■■■■ However, it has been clearly established that plaintiffs need not produce direct evidence of a politically-based discriminatory animus. *Acosta–Orozco v. Rodríguez–De–Rivera*, 132 F.3d 97, 101–102 (1st Cir.1997). Instead, in order to demonstrate that political discrimination was a substantial or motivating factor behind a

plaintiff's dismissal, the First Circuit has held that circumstantial evidence alone can support a finding of political discrimination. *See Acosta–Orozco,* 132 F.3d at 101–102; *Anthony v. Sundlun,* 952 F.2d 603, 605 (1st Cir.1991); *Estrada–Izquierdo v. Aponte–Roque,* 850 F.2d 10, 14–15 (1st Cir.1988). The operative question in this kind of scenario is "does the circumstantial evidence, taken as a whole, give rise to a plausible inference of discriminatory animus which, ultimately possesses enough convictive force to persuade a rational factfinder that the defendants' conduct was politically motivated?" *Anthony,* 952 F.2d at 606.

Factors that have been found to show discriminatory animus include the fact that the plaintiff was a known member of the opposing political party, that the position was then filled by a member of the opposite political party, and that everyone of the plaintiff's party was demoted after a change in office. *See Rodríguez–Pinto,* 982 F.2d at 40; *Rivera–Ruiz v. González–Rivera,* 983 F.2d 332, 335 (1st Cir.1993); *Acevedo–García v. Vera Monroig,* 30 F.Supp.2d 141 (D.Puerto Rico 1998) (Pieras, J.) *aff'd,* 204 F.3d 1 (1st Cir.2000).

■■■■ The Court finds that, through deposition testimony and responses to interrogatories, Plaintiffs have provided evidence sufficient to sustain their initial burden on summary judgment. Plaintiffs testify that they are members of the NPP while the new administration was run by the PDP. Plaintiffs have testified that their job performance was satisfactory. In addition, Plaintiffs have testified that they were substituted with members of the new administration's party, the PDP. Plaintiffs have testified that Defendant Alvarez made comments during an interview to the effect that "All NPPs are corrupt" and that, as the new director of the Ad-

ministration, he was going to "clean the house" and "to make adjustments." Plaintiffs have testified that Human Resources Director Ramonita Quiñones said that the termination of Plaintiffs' contracts and their replacement with other workers took place due to "orders from above" and for "political reasons". Finally, the record shows that the contracts of the transitory Plaintiffs had been continuously renewed, in some cases for many years, prior to the arrival of the PDP administration. Plaintiffs have testified that the sudden change in policy and practice as to their renewal was based on Plaintiffs' political affiliation. The Court finds that the Plaintiffs have provided a sufficient showing of discriminatory animus based on political affiliation to survive this motion for summary judgment.

■ As a final matter, the Court finds that Defendant has no evidence to substantiate its claim of lack of discriminatory motive, a key element in a political discrimination defense. Indeed, and contrary to Defendant's assertion, the Court finds that the factual circumstances and *motivation* surrounding Defendant's personnel decisions are actually in dispute. *See Roldán–Plumey*, 115 F.3d at 65; *see also Gómez–Candelaria v. Rivera–Rodríguez*, 218 F.Supp.2d 66, 75 (D.Puerto Rico 2002) (Pieras, J.). The key component of a political discrimination defense for any type of employee, whether he be career, regular, irregular or transitory, is a *lack of discriminatory animus by the Defendants*, which is a question of fact proper only for a jury to decide.

### E. Qualified Immunity

According to Defendant, his conduct is protected by the doctrine of qualified immunity because it was imminently reasonable and did not violate clearly established law. Defendant states that the Plaintiffs'

only evidence of his alleged discriminatory animus are statements he made to the press.

■ The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey*, 115 F.3d at 65. The general rule regarding qualified immunity is that government officials are immune from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Acevedo–García*, 204 F.3d at 10 (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

■ When assessing a claim of qualified immunity, the Court should first consider whether the allegations of the complaint make out a constitutional rights claim. *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1694, 143 L.Ed.2d 818 (1999). If the answer to this inquiry is in the affirmative, the Court must then determine, as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. *St. Hilaire v. Laconia*, 71 F.3d 20 (1st Cir.1995), *cert. denied* 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). The Supreme Court has recently noted however that "[t]his inquiry, . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If this inquiry yields an answer that is also in the affirmative, the final inquiry is

whether a similarly situated official reasonably "should have understood that [his or her] conduct violated" that right. *St. Hilaire*, 71 F.3d 20 at 24. If the answer is in the affirmative, qualified immunity is appropriate. However, a negative answer to any of the aforementioned three steps requires that the Court deny the defense.

 It has been clearly established that when there is a material dispute of fact, summary judgment cannot be ordered. *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997). "Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella". *Id.* The Court finds that in the case at bar, Plaintiffs have alleged facts that, if true, make out a constitutional rights claim of political discrimination. If the employment actions taken were motivated by political animus, the Defendant knew or should have known that such action was clearly unconstitutional. While the general prohibition against political discrimination was clearly established when Defendant acted [2], the factual circumstances and motivations surrounding the Defendant's personnel decisions are in dispute. *See Roldán–Plumey* 115 F.3d at 65–66; *see also Gómez–Candelaria*, 218 F.Supp.2d at 76. Therefore, due to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding Defendant's personnel decisions, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendant's motion for qualified immunity at this time. *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir.2002); *Acevedo–García*, 30 F.Supp.2d at 148; *Gómez–Candelaria*, 218 F.Supp.2d at 76.

Accordingly, Defendant's motion for qualified immunity is hereby DENIED at this stage of the litigation.

## V. CONCLUSION

The Court **GRANTS IN PART** Defendant Julio Alvarez's Motion for Summary Judgment (docket No. 44) and **DISMISSES WITH PREJUDICE** the Fourteenth Amendment Due Process claims of the fourteen Plaintiffs who Defendant employed under fixed-term contracts as transitory employees. The Court **DENIES** Defendant's motion for summary judgment on all other grounds advanced by Defendant.

**IT IS SO ORDERED.**

---

**2.** *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).